DeBAUM AND THISTLE v. THE CITY OF NEW YORK.

A mere tax-payer, in a municipal corporation, has no right to maintain an action to restrain the corporation from a particular exercise of its corporate powers. The remedy is, by suit brought by the State, through its legitimate officer, the attorney-general.

IN this case, the corporation of New York had made a contract with the defendants, Russ and Reid, to pave certain streets of that city. The plaintiffs, as mere tax-payers, and not as parties aggrieved by the measure, brought their action to restrain the performance of the contract, on the ground that it was an improvident one, and an usurpation of power not conferred on the corporation. EDMONDS, J., refused the injunction, and from his decision an appeal was taken.

Upon the question whether a tax-payer had a right to maintain such a suit, the judges of the Supreme Court in the district of New York were divided in opinion, two of them — EDWARDS and ROSEVELT — holding that a tax-payer had such a right, and two of them — EDMONDS and MORRIS — holding the opposite opinion.

The question came before the court at general term, all five of the judges of that district sitting in banc.

A majority of the court, MITCHELL and ROSEVELT, delivering opinions, held that the tax-payer had such a right. EDMONDS and MORRIS dissented.

The opinions of MITCHELL, ROSEVELT and MORRIS, JJ., were published in the report of the case, in 16 Barb. 392.

The opinion of EDMONDS, J., on refusing the injunction, has never been published, but is now reported, because its views were afterward sustained by the Court of Appeals, in

*Doolittle* v. *Supervisors of Broome County* (18 New York Reports, 155).

*Edmonds, J.:* In this case, these plaintiffs, as tax-payers in the city of New York, for themselves and other tax-payers, have filed a complaint asking that the common council of the city may be restrained from making a contract with the defendants, Russ and Reid, for laying a portion of the streets with the Russ pavement. A preliminary injunction is not asked for, but a permanent one, to restrain the defendants from acting under a resolution then pending in the common council, and not finally acted upon; and it is also prayed that such resolution, thus incomplete, may be adjudged by this court to be corrupt, fraudulent and void.

The grounds on which this relief is sought are briefly these:

1. That the taxes of the city have, within the past few years, greatly increased by reason of the waste, negligence and corruption, of the common council.

2. That there were two applications before the common council, whereby the work proposed could have been done much cheaper, and they were improperly rejected.

3. That the resolution in question was sought to be passed by direct bribery from Russ and Reid to the majority of the common council.

4. That the price proposed to be paid to Russ and Reid was excessive and unreasonable, and was so made for the purpose of enabling them thus to bribe the common council.

5. That the resolution is illegal, as it violates several provisions of the statute, namely, that it is not based on statements previously made by the proper executive officer; that it usurps executive power, and that it takes the power from the officer to whom it properly belongs, and confers it on one to whose department it does not belong.

6. That the resolution was finally hurried through the common council, in order to evade a bill then pending in the legislature, and subsequently passed into a law.

Such is the case as presented on the part of the plaintiffs, on which, without hearing the defendants, they were restrained by a preliminary injunction. The defendants have, however, now been heard, and I shall inquire, first, how the case stands under their explanations and answer; and, second, how far it is competent or proper for the court to interfere in the case thus made out by the evidence on both sides.

As to the first allegation, that the taxes have greatly increased within a few years by the waste, negligence, and corruption of the common council, no answer is made. The charge extends back a period of eight years, and none of the parties to this suit seem to feel themselves called upon to defend the former members of the common council from this sweeping charge. And if that part of the complaint had not been stricken out as irrelevant to the matter in hand, I should be obliged now to hold those persons who are not now in court, and cannot be heard on the charge, as confessedly guilty of most foul corruption. It is painful enough for me to meet with charges of corruption so freely made against those who at present constitute our chief municipal authority. But it would be still more painful if I were compelled to regard the charge as distinctly made out against all who have administered our affairs for the last eight years. I am, however, saved that necessity by the amendment that has been made, though I must not overlook the fact that the charge was in the complaint, and could not then be erased, when the application was originally made and granted for the preliminary injunction.

As to the second charge, that other proposals, more advantageous to the city, were rejected, it is answered that Russ has a patent right, and, under the supreme law of the land, a monopoly for making that peculiar form of pavement, and that, under those laws, he has the same right that every other holder of a patent in the country has, to demand compensation for his invention.

As to the third charge, that this resolution was sought to be passed by direct bribery, while it is made only on "informa-

tion and belief," a mode of statement which, under the rules and practice of the courts, is never sufficient to sustain an injunction, it is met, on the other side, by the positive and unequivocal denial of Russ and Reid, and all the members of both boards who voted for the measure. The charge, therefore, is to be regarded, according to the well established practice of the court, as overthrown, and not to be considered in determining the question before me.

As to the fourth charge, that the price proposed to be paid Russ and Reid is excessive and unreasonable, it is met by a statement by them, under oath, and by reports of the committees of the common council, which may or may not be satisfactory to those who are clothed with the power of acting upon the subject.

The fifth charge has three propositions. First, that the resolution was not based on statements previously made by the proper officer. The act to amend the charter, passed in 1849, enacts (section 7) that no money shall be drawn from the city treasury unless previously appropriated, and all appropriations shall be based upon specific and detailed statements in writing of the several heads of departments, through the comptroller. The resolution in question appropriates $50,000, but does not appear to be based on any statement as required by this statute.

Whether this enactment is merely directory, as has been held in respect to the provision of the charter of 1830, requiring the ayes and noes to be taken, or is so essential as to render void any act disregarding it, is a question which it is not necessary here to discuss.

The second proposition is, that the resolution usurps executive power. The first section of the act of 1849 vests the legislative power of the corporation in the common council, and the ninth section vests the executive power in the mayor and heads of departments, and prohibits the common council, or any of its committees or members, from performing any executive business whatever, except such as may be specially imposed on them by the laws of the State.

The statute is very indefinite as to what is executive, and what legislative power. One thing seems certain, that all appropriation of money is clearly legislative, while the " opening, regulating, and paving streets," and providing supplies for them, are executive. The legislative power is nowhere defined, but there are various provisions, establishing executive departments, and defining their respective duties, whence it would seem that what is not thus defined as executive, must continue to be legislative, for the reason that when the act passed , the common council was the general receptacle of municipal power, and the departments took only what was expressly given them. To that effect is section 21, which declares that the several executive departments, and the officers and clerks thereof, shall be subject to the legislative regulation and direction of the common council, so far as the same shall not be inconsistent with that act.

Thus, it is manifest that the general regulation and direction of the several executive departments, is a part of the legislative power of the common council, wherever it is not expressly regulated by statute.

Now, it is conceded in this case that it is within the legislative province of the common council, to direct the streets to be paved as provided in this resolution, but, it is insisted, the designation of the persons who are to do it, and the price at which it is to be done, is executive, and therefore belongs to the head of a department, and not to the common council — in other words, that the common council might direct that the pavement should be laid, but that it was for the head of the department to determine who should do it, and on what terms; and that the only remaining power of the common council would be to appropriate the money which might be necessary to enable the head of the department to carry out any contract which he might make — the terms of such contract being entirely and exclusively within his control.

Such is the claim set up by the plaintiffs in this regard, and it may be a subject for future consideration whether it is well founded or not,

DeBaum and Thistle v. The City of New York.

The remaining branch of this charge, namely, that the resolution takes away the power of executing it from the street department, and confers it on the department of repairs and supplies, seems to me to be well grounded. The latter department has, under the statute, cognizance only of repairs and supplies for public pavements, while it is the street department, alone, that has cognizance of paving.

The sixth charge, that the resolution was hurried through so as to forestall the act of 1853, is unnoticed by any of the parties.

Thus, then, the case stands before me. It is conceded that the resolution was hurried through the common council, so as to forestall the act of 1853. It is established that there were two propositions before the common council to do the work cheaper than was proposed by the resolution; that the appropriation was not based on any previous statement from the proper department, and that the whole work was placed under the charge of the wrong department. It is doubtful whether it proposes a usurpation of executive power, or provides for an unreasonable and excessive compensation; and it is denied and controverted that there was any corruption or bribery in the case.

And the remaining question is, whether, under such circumstances, it is competent or proper for this court to interfere, by injunction, either preliminarily or final.

I approach this part of the subject with unfeigned diffidence, because I am constrained to differ in opinion with several of my brethren on the bench whose opinions I have ever regarded with respect, and because I may very well from thence apprehend that I may err. But I can truly say, with one of the ancient judges: "It is a consideration of great comfort to me, that, if I do err, my judgment is not conclusive to the party, but my mistake will be rectified, and so injustice not be done."

I have ever looked with alarm upon the interference of the judicial with the executive or legislative departments of the government; and whenever it has been necessary for me, as it

has sometimes, to weigh a legislative enactment in the scales of the Constitution, I have endeavored to do it with a cautious, prudent, pains-taking, as well as fearless hand. And I have been the more anxious of late, from the alarming increase of discretionary power which has in this State, within the last few years, been thrust upon the judiciary, until I have trembled for the permanency of a system thus beset with temptation and trial at its every step. Undoubtedly one of the wisest and most salutary principles of our institutions, has been the duty which has devolved upon the judiciary, of restraining executive or legislative usurpation upon constitutional law. Unfortunately there has been nothing but its own sense of propriety to restrain judicial usurpation; and its usual mode hitherto of restraining the other departments has been not by prohibiting the act, but by declaring it void, and that no rights could be acquired under it. Thus it was that the Supreme Court of the United States nullified our insolvent and steamboat laws, the stop-laws of some of the western States, and the anti-slavery laws of Pennsylvania. And thus, in a recent case, did our Court of Appeals overthrow the act for the enlargement of our canals.

This principle of our institutions we do not inherit from England, with the great mass of the common law which governs us, for there the parliament was regarded as omnipotent; but it is, in a great measure, indigenous to our country, arising from the fact of our having written constitutions designating the powers and duties of the different departments of government. It was put forth in the *Federalist*, No. 78, and in less than five years after the adoption of the Constitution it was asserted by our courts. (1 Kent Com. 450; 2 Dallas, 410.)

It has been maintained since by a long series of decisions, and almost, if not uniformly, not by restraining legislative action, but by declaring it void.

Now, even if it were in the power of the courts to restrain legislative action, it would require a clear, marked, and unequivocal case of legislative usurpation, and against which there was no other remedy, that could induce me to depart

DeBaum and Thistle v. The City of New York.

from a practice which thus sprung up in the infancy of our country, and has been thus steadily adhered to by the sages of the law for more than fifty years.

This is not such a case. It is conceded on all hands that a part, at least, of the obnoxious resolution is an unequivocal exercise of legislative power, and, after it shall have passed, the remedy would be ample and complete in any of the heads of departments within whose province it might come, refusing to execute it as a void law, and thus the question be properly brought before the proper tribunal for final adjudication.

It will be observed that I am not discussing the question whether the act of the common council is right or not, but merely whether, if it be wrong, it is proper for the court to interfere, by its strong hand, and its extraordinary power of injunction. *Odi accipitrem qui semper vivet in armis.* And much do I prefer, so far as I may be allowed any option, adhering to the practice which has obtained from the very foundation of our government, and from which I see no good reason to depart.

Still I am free to confess that if this was the only consideration that pressed upon my mind I should hesitate about departing from the ruling of my brethren on a kindred subject, for I should be bound to suppose that such obvious considerations had not escaped the attention they deserved at their hands. But there is a view which is controlling with me, and to which it is evident their attention has not been called. I do not find in any of the opinions to which I have been referred, any reference to the Revised Statutes which I suppose disposes of the question before me.

In this case the suit is brought by two of a great number of tax-payers, and, if it can be sustained, then all the rest of the tax-payers in the city may also bring their suits, not only in regard to this particular matter, but in regard to any other within the scope of the legislative powers of the corporation. Thus might arise an amount of litigation that would be overwhelming.

It is true that such a consideration does not disprove the

jurisdiction of the court, nor does such reasoning from extremes always lead to just conclusions; but it must not be overlooked, for it may be of importance to see where the principle under which we act will lead us. Far, however, as it may conduct us, it might be necessary to follow it, if the court should be satisfied that there was no other remedy against usurpation by corporations. Such, indeed, I see was the consideration pressed upon the court in one of the cases, and the learned judges might well have been startled at the bold proposition that was put forth by one of the counsel, and which seemed to claim an entire immunity for municipal corporations.

The mistake was in overlooking our statutes on this subject. Several English cases were referred to, on those arguments as well as on that before me, which grew out of the British corporation reform bill which passed in 1835. Though respectable for their source, they are of no binding force with us, because we have a statute of our own, passed in 1830, amply providing for such a case as this. It is that statute which has been overlooked in the consideration of these cases, and it provides a complete and ample remedy.

I refer to Art. 2 of Title 4 of Chap. 8, of the 3d part of the Revised Statutes (2 R. S. 462), entitled "Of proceedings against corporations in equity."

It provides that, on a bill being filed by the attorney-general, the court may restrain, by injunction, any corporation from assuming or exercising any franchise, liberty or privilege, or transacting any business not allowed by the charter of such corporation.

It also provides that in certain cases an injunction may also issue, as well on the application of a creditor or stockholder as on that of the attorney-general.

This statute grew out of a decision of Chancellor KENT (*Attorney-General* v. *Utica Ins. Co.*, 2 J. C. R. 391), in which he held that the restraining a corporation by injunction, from usurping a franchise, was without precedent; that the process of injunction was *too peremptory and powerful*

DeBaum and Thistle v. The City of New York.

in its effects to be used in such a case without the clearest sanction; and that he should better consult the stability and utility of the power of the court by not stretching them beyond the limits prescribed by the precedents.

Such was the state of the law when our Revised Statutes were proposed, and they provided an adequate remedy, and regulated its exercise in the case of all corporate usurpations, except only in cases of libraries, religious societies, and certain schools.

Why should this statute be entirely disregarded, and virtually be repealed, as it will be if such proceedings as this be sanctioned?

If these plaintiffs, or any other tax-payer, have cause of complaint, their remedy is very plain. Let them go to the attorney-general, the law officer of this State, and, in the language of the statute, give him "satisfactory proof that the defendants complained of have usurped, exercised, or claimed, any franchise, privilege, liberty or corporate right, not granted them," and then it will at once be his duty to intervene, and by taking proper proceedings in behalf of the whole people, save the infinite confusion and mischief that must spring up from tolerating a practice unprecedented in courts on this side the water, and which opens an endless flood of litigation to thousands upon thousands of cases.

I repeat, that if this proceeding can be sustained, it will be virtually repealing, and, at least, entirely disregarding a very important statute, under which we have acted for near a quarter of a century, and which was regarded at the time, and justly so, too, as a wise reform in the law touching corporations, a reform which the British legislature afterward followed, and which has been too salutary in its action with us to be slighted or disregarded.

For these two reasons, then, first, that the uniform practice of our courts since the establishment of our institutions has been to reach void enactments by declaring them void after they are passed, and not by restraining them while in process of legislation, and, second, because our legislature has provid-

ed an ample remedy, which this proceeding interferes with, I am of opinion that the injunction in this case was improperly granted, and must be dissolved.

It will be observed, however, that in coming to this conclusion I confine myself to the consideration of the powers of this court, and do not mean to touch the question whether the action of the common council is right or wrong. And in doing so I depart in some measure from opinions expressed by some of my brethren, because the statute, on which I mainly base my decision, has not been, in this connection, presented to their consideration, and can, in this manner, be most properly, and without injury, laid before them on appeal from my decision.